# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

NATIONAL SHOOTING SPORTS FOUNDATION,

*Appellant*,

v.

ATTORNEY GENERAL OF NEW JERSEY,

*Appellee*.

———————————

On Appeal from the United States District Court for the District of New Jersey,
No. 3:22-cv-06646

———————————

## REPLY BRIEF FOR APPELLANT

———————————

DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, PC
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040

ERIN E. MURPHY
MATTHEW D. ROWEN
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiff-Appellant*

February 6, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 4

I.     There Is No Basis For Abstention Here .......................................... 4

      A.     The *Glock* Lawsuit Provides No Basis for Precluding NSSF From Challenging A1765 in Federal Court on Behalf of its Many Members ...................................................................... 4

      B.     This Case Would Not Satisfy the Additional Requirements for *Younger* Abstention Even if *Younger* Were on the Table ................... 12

      C.     *Brillhart-Wilton* Is Inapposite ............................................. 18

II.    NSSF's Claims Are Justiciable .................................................... 20

CONCLUSION ....................................................................................... 26

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE WITH WORD COUNT

IDENTICAL PDF AND HARD COPY CERTIFICATE

VIRUS SCAN CERTIFICATE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Argen v. Att'y Gen.*,
  2022 WL 3369109 (3d Cir. Aug. 16, 2022) ...................................................... 12

*Cedar Rapids Cellular Tel., L.P. v. Miller*,
  280 F.3d 874 (8th Cir. 2002) ................................................................ 14

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ......................................................................... 15

*Hicks v. Miranda*,
  422 U.S. 332 (1975) ......................................................................... 15

*Jonathan R. v. Justice*,
  41 F.4th 316 (4th Cir. 2022) ...................................................... 2, 10, 11

*Kelly v. Maxum Specialty Ins. Grp.*,
  868 F.3d 274 (3d Cir. 2017) ................................................................. 19

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994) ........................................................ 2, 11, 12

*Mass. Delivery Ass'n v. Coakley*,
  671 F.3d 33 (1st Cir. 2012) ................................................................. 13

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ......................................................................... 17

*N.J. Bankers Ass'n v. Atty. Gen.*,
  49 F.4th 849 (3d Cir. 2022) ................................................................... 5

*N.J.-Phila. Presbytery of the Bible Presbyterian Church
  v. N.J. State Bd. of Higher Educ.*,
  654 F.2d 868 (3d Cir. 1981) ..................................................... 14, 15, 18

*Nat'l Shooting Sports Found. v. Att'y Gen.*,
  80 F.4th 215 (3d Cir. 2023) .......................................................... *passim*

*NOPSI v. Council of New Orleans*,
  491 U.S. 350 (1989) .............................................................. 11, 13, 19

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987) .............................................................................................18

*Platkin v. Point Blank Guns & Ammo LLC*,
   No. MRS-C-123-24 (N.J. Sup. Ct. Nov. 13, 2024) ...........................................22

*Platkin v. RR Outdoors, LLC*,
   No. CUM-C-37-24 (N.J. Sup. Ct. Nov. 13, 2024) .............................................22

*Platkin v. Sig Sauer*,
   No. ESX-C-000217-25 (N.J. Sup. Ct. Oct. 16, 2025) .........................................5

*Rarick v. Federated Serv. Ins. Co.*,
   852 F.3d 223 (3d Cir. 2017) .............................................................................19

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*,
   397 F.3d 56 (1st Cir. 2005) ..............................................................................11

*Smith & Wesson Brands, Inc. v. Att'y Gen.*,
   27 F.4th 886 (3d Cir. 2022) ..............................................................................16

*Spargo v. N.Y. State Comm'n on Jud. Conduct*,
   351 F.3d 65 (2d Cir. 2003) ...............................................................................14

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) .............................................................................2, 11, 16, 19

*Tokyo Gwinnett, LLC v. Gwinnett Cnty.*,
   940 F.3d 1254 (11th Cir. 2019) ........................................................................16

*Tony Alamo Christian Ministries v. Selig*,
   664 F.3d 1245 (8th Cir. 2012) ..........................................................................13

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ..........................................................................................19

*Younger v. Harris*,
   401 U.S. 37 (1971) ..............................................................................................1

**INTRODUCTION**

The Attorney General's brief confirms that the decision below cannot stand. The AG acknowledges that NSSF brought this renewed challenge to New Jersey Assembly Bill 1765 on behalf of the thousands of NSSF members that A1765 exposes to liability, not just on behalf of the one NSSF member (Glock) against whom he has initiated an enforcement action. And the AG concedes that NSSF cannot be "barred from bringing a pre-enforcement challenge to [A1765]" on behalf of its thousands of members simply because A1765 "has been enforced against [Glock]." Resp.Br.45. On that score, at least, the AG is correct: NSSF's suit on behalf of its diverse membership "face[s] no *Younger* bar." Resp.Br.45. All parties now agree that the AG's state-court suit against Glock provides no basis to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), from adjudicating NSSF's claims on behalf of other industry members. Because that is precisely what the district court did, this Court thus should reverse and allow NSSF's challenge to proceed.

The AG resists that conclusion, insisting that the district court *really* rejected the bulk of NSSF's claims for lack of standing, and abstained only as to a narrow "as-applied claim tied to the *Glock* fact pattern." Resp.Br.41. That is revisionist history. The district court held that NSSF had standing to bring all five of its constitutional claims, not just some subset that focused on "the *Glock* fact pattern." That makes sense, as NSSF has not pursued any such claim. NSSF pointed to the

*Glock* suit (along with four other enforcement actions under A1765 involving entirely different fact patterns) only to show that its members face a credible threat of enforcement under A1765 by the AG for engaging in lawful commerce—not because it wants to raise some argument that applies only to enforcement actions that present the same facts as that one. The AG's lack-of-standing argument thus would require rewriting the district court's decision to hold that NSSF has standing to press only an "as-applied claim" that its complaint does not press.

At any rate, the AG's imaginative reconstruction would not save the district court's abstention ruling, as *Younger* comes into play only when a plaintiff seeks "an interruption, an injunction, an end to the pending state proceedings." *Jonathan R. v. Justice*, 41 F.4th 316, 334 (4th Cir. 2022). As NSSF took pains to explain below and again in its opening brief here, that is not what it is seeking. NSSF has consistently and explicitly disavowed any intention of seeking any injunctive or other relief that would interfere with the *Glock* action. To state the obvious, the AG cannot foist upon NSSF a collateral attack it has explicitly disavowed. And the mere "fact that a judgment in the federal suit might have collateral *effects* in the state proceeding is not interference for *Younger* purposes." *Marks v. Stinson*, 19 F.3d 873, 885 (3d Cir. 1994) (emphasis added); *accord Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). *Younger* abstention thus would have no role to play here even if

the district court *had* held (contrary to reality) that NSSF's standing is confined to lawsuits involving "the *Glock* fact pattern."

In all events, the AG's argument that NSSF has not cured the Article III deficiencies that led this Court to dismiss NSSF's challenge last time is unavailing. The six enforcement actions the state has brought under A1765 since this Court's earlier decision erase all doubt that NSSF's members face a substantial threat of enforcement—not just based on "the *Glock* fact pattern," but for the other lawful commerce in arms in which nearly a dozen members attested in declarations below to wanting to continue engaging. And those declarations (which the AG ignores) confirm that NSSF members are currently spending time and money, and losing sales and reputational credit, trying to comply with obligations that are not obvious on the face of A1765, but which the state has now made clear through those lawsuits it believes A1765 imposes. If that is not sufficient to show that NSSF members face a credible threat of enforcement, then it is hard to imagine what would suffice. This Court should reverse and finally allow NSSF to litigate on the merits the constitutional claims that the district court has already found likely warrant relief.

**ARGUMENT**

**I.    There Is No Basis For Abstention Here.**

**A.    The *Glock* Lawsuit Provides No Basis for Precluding NSSF From Challenging A1765 in Federal Court on Behalf of its Many Members.**

The AG admits that NSSF cannot be "barred from bringing a pre-enforcement challenge to" A1765 on behalf of its thousands of members just because the statute "has been enforced against [Glock]."  Resp.Br.45.  He also concedes that this federal lawsuit "face[s] no *Younger* bar" to the extent it seeks to challenge A1765 to protect the interests of NSSF members who are not party to the *Glock* case (i.e., everyone except Glock).  Resp.Br.45.  Those concessions are correct—and they mean that the decision below cannot stand, as the district court "instruct[ed]" "the Clerk's Office" "to **ADMINISTRATIVELY TERMINATE** this matter" *in its entirety* pursuant to the *Younger* doctrine solely because of the pendency of *Glock* action.  JA.23-24.

Unable to defend what the district court actually did, the AG tries to rewrite its decision—and, in the process, NSSF's complaint.  He insists that NSSF "misunderstands the ruling below," which, he says, actually concluded that everything save NSSF's purported "collateral attack" on the *Glock* suit is "not justiciable," and then abstained from resolving *only* that *Glock*-specific challenge.  Resp.Br.53-56.  That is revisionist history in the extreme.

1. To start with standing, the district court did not hold that *any* of NSSF's claims was "not justiciable."  To the contrary, the court held in no uncertain terms

that NSSF has Article III standing "to bring this suit on behalf of its members" "for 'each claim'" it presses "and 'each form of relief'" it seeks. JA.9, 12.

The court began by finding that "there is no longer doubt about whether the Attorney General 'might sue [NSSF] or its members.'" JA.11. That was not just because of the *Glock* suit. As the court explained, "the Attorney General has initiated five enforcement actions" under A1765, "including the Glock Suit," "since [this Court's] decision." JA.11. "In light of the five enforcement actions, two of which have now settled, there is a substantial risk of enforcement against NSSF and its members."[1] JA.14. "Further bolstering the threat of enforcement" was the fact that, despite the court's pleas for "clarity at oral argument," the AG could not explain "how [A1765] functions and what triggers [his] arguably selective enforcement" of it. JA.11 n.4. Next, the court found that "[b]y bringing this lawsuit to defend *its members' rights* to engage in the otherwise legal manufacture and sale of firearms, NSSF is acting well within its stated purpose." JA.12 (emphasis added). "Finally, none of NSSF's claims require individual participation by Glock *or other members*

---

[1] The number of A1765 enforcement actions has since grown to six: The AG sued Sig Sauer, another NSSF member, late last year, alleging that the design, manufacture, marketing, and sale of its flagship handgun violates A1765. *See Platkin v. Sig Sauer*, No. ESX-C-000217-25 (N.J. Sup. Ct. Oct. 16, 2025). That suit, which was filed after the district court reopened this one, confirms that the "threat of enforcement" to NSSF members in particular is not just "credible," *N.J. Bankers Ass'n v. Atty. Gen.*, 49 F.4th 849, 855 (3d Cir. 2022), but palpable.

because the issues in this case are purely legal and do not involve individualized proofs." JA.12 (emphasis added). "Accordingly," the court held "that NSSF has demonstrated that it has associational standing to bring this suit *on behalf of its members*." JA.12 (emphasis added). And for good measure, the court held NSSF's claims ripe too. JA.13-14.

None of that is remotely consistent with the AG's insistence that the court concluded that "NSSF has standing only for an as-applied claim tied to the *Glock* fact pattern." Resp.Br.41. The AG has no explanation for why the court repeatedly highlighted the four other lawsuits if it was actually focused solely on "the *Glock* fact pattern," as none of those lawsuits involves that fact pattern.[2] And if the court had really thought that NSSF demonstrated *only* that Glock itself faces a credible fear of enforcement, then it could not have held that NSSF has standing "to bring this suit on behalf of its members" writ large. JA.12.

More fundamentally, the AG's argument makes no sense, as NSSF has not brought any "as-applied claim tied to the *Glock* fact pattern." Resp.Br.41. To be sure, NSSF has pointed to the *Glock* suit as evidence that the AG is suing not just

---

[2] Two were actions against licensed retailers for selling magazines and ammunition without first checking whether the purchaser was prohibited from possessing a firearm; another alleged that the industry member sold firearm kits *in Pennsylvania* that are lawful there but not in New Jersey; the fourth was premised on a retailer's alleged failure to properly secure its premises and merchandise. *See* JA.475-547, 568-594, 627-664.

industry members in general, but NSSF members in particular, for engaging in lawful commerce in arms. But NSSF has not asked the district court to resolve any issue unique to "the Glock fact pattern"—e.g., whether the manner in which Glock (or anyone else) manufactures striker-fire pistols actually violates A1765. In fact, *contra* Resp.Br.57, NSSF has not brought *any* "as-applied" challenge that turns on the particular fact patterns of the lawsuits to which it has pointed as evidence that its members face a credible threat of enforcement for engaging in lawful commerce in arms. NSSF has instead pressed claims that A1765 is unconstitutional, either in whole or as applied to far more than just those fact patterns.

In particular, NSSF's complaint asserts five constitutional claims. *See* JA.7. Count One alleges that the Protection of Lawful Commerce in Arms Act preempts A1765 (at least) to the extent A1765 authorizes civil liability actions against firearm industry members for conduct that does not knowingly violate any extant law. JA.130-35 ¶¶58-78. Count Two alleges that A1765 violates the Commerce Clause principally as applied to manufacturing, selling, and marketing in *other* states that is lawful where it occurs. JA.136-38 ¶¶79-88. Count Three alleges that A1765 violates the First Amendment as applied to speech (marketing) that is not false or misleading and does not promote unlawful conduct. JA.138-43 ¶¶89-103. Count Four alleges that A1765 violates the Second Amendment in all of its applications. JA.144 ¶¶104-08. And Count Five alleges that A1765 is void for vagueness, again in all of its

applications. JA.145-49 ¶¶109-21. Some of those claims are purely facial; others have both facial and as-applied components. *See* JA.824 (explaining that "the amended complaint raises both facial and as-applied challenges"). But none would preclude enforcement actions only if they are premised on "the *Glock* fact pattern." Resp.Br.41.

As all of that goes to show, even if (contrary to reality) the district court *had* held that NSSF demonstrated a credible threat of enforcement only vis-à-vis "the *Glock* fact pattern," that would not confine NSSF to pressing some narrow universe of Glock-fact-pattern-specific "as-applied" arguments that its complaint does not assert. It would entitle NSSF to press the constitutional claims it actually brought— which are in no way confined to that particular fact pattern. The AG's Glock-specific standing argument thus does not even make sense on its own terms.

2. In all events, even if the district court *had* concluded that NSSF had standing only vis-à-vis "the *Glock* fact pattern," Resp.Br.41, that would not justify abstaining from resolving *any*—let alone *all*—of NSSF's claims. The AG's contrary argument rests on his dogged insistence that this case is really a "collateral attack on the *Glock* suit." Resp.Br.25. That is baffling. NSSF explicitly and repeatedly disclaimed any intention of asking the district court to enjoin or otherwise interfere with the *Glock* suit. *See, e.g.*, JA.822 (disclaiming any relief that would "enjoin" the *Glock* suit or any other "ongoing state court" action); JA.844 (similar);

Dist.Ct.Dkt.53 at 10-11 (similar).  NSSF did so again in its opening brief in this Court.  *E.g.*, NSSF.Br.21-22.  And lest there be any lingering doubt, NSSF will say it once again:  NSSF has not asked and will not ask the district court to enjoin or in any way interfere with the *Glock* suit (or any other state-court litigation under A1765 that was pending when this lawsuit was initiated).

The fact that NSSF pointed to the *Glock* suit (among others) as evidence that its members face a well-founded fear of enforcement actions for engaging in various types of lawful commerce in arms does not somehow convert its lawsuit into a "collateral attack" on the *Glock* suit any more than it converts it into a collateral attack on any of the four other lawsuits to which NSSF pointed.  NSSF is free to point to lawsuits against NSSF members and nonmembers alike to show that *all* industry members—NSSF members included—face a credible threat of enforcement under A1765 for engaging in lawful commerce.  Indeed, this Court faulted NSSF for its inability to do so the first time around.  *See Nat'l Shooting Sports Found. v. Att'y Gen.* (*NSSF I*), 80 F.4th 215, 219 (3d Cir. 2023).  NSSF's efforts to remedy that *standing* deficiency in its case did not somehow convert this lawsuit into a "collateral attack" on every state-court action under A1765 that happens to be pending.  As the AG himself admits (at 45), NSSF does not lose the power to seek relief on behalf of *other* members just because it could not seek that relief on behalf of Glock if (contrary to reality) it tried to do so.

The AG ultimately acknowledges (albeit in passing) that NSSF does not seek federal-court intervention against or interruption of the AG's state-court suit against Glock. Resp.Br.31-32. He nonetheless insists that whether NSSF has asked to "enjoin or otherwise interfere with' the *Glock* action … is a red herring"; according to the AG, "the relief NSSF [seeks]" in this case necessarily "would interfere with the *Glock* action." Resp.Br.31-32. But he nowhere explains how or why the relief NSSF has sought would "interfere with" that action. Resp.Br.32. Nor could he. Again, NSSF does not seek an injunction against the *Glock* suit. NSSF seeks a declaratory judgment that A1765 violates multiple constitutional provisions and is preempted, as well as a forward-looking injunction barring the AG from bringing *new* enforcement actions under A1765. JA.149 (Prayer for Relief). A federal-court judgment granting either or both of those forms of relief would in no way "risk the kind of interference *Younger* seeks to forestall: an interruption, an injunction, an end to the pending state proceedings." *Jonathan R.*, 41 F.4th at 334. It would just be persuasive authority from another court confronted with similar issues that the state court could—or could not—choose to follow in resolving the *Glock* suit.

The AG thus misses the mark when he claims that a "federal-court injunction" preventing him from bringing *new* enforcement actions under A1765 could have indirect, "collateral effects" on the *Glock* suit. Resp.Br.32. "It is true, of course, that the district court might find a violation [of the Constitution] where the state court

would not." *Jonathan R.*, 41 F.4th at 333. But the "fact that a judgment in the federal suit might have collateral *effects* in the state proceeding is not interference for *Younger* purposes." *Marks*, 19 F.3d at 885 (emphasis added). Nor could it be, as such a capacious conception of *Younger* abstention would routinely foreclose federal-court jurisdiction. *But see Sprint*, 571 U.S. at 77 ("Jurisdiction existing, … a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.' Parallel state-court proceedings do not detract from that obligation.").

NSSF explained all this in its opening brief. Indeed, that was NSSF's lead argument. *See* NSSF.Br.18-23; *see also, e.g.*, NSSF.Br.22 (noting that the Supreme Court rejected application of *Younger* in *NOPSI v. Council of New Orleans*, 491 U.S. 350 (1989), even though the federal proceeding there "'may well [have] affected[], or for practical purposes, pre-empt[ed], [the] … pending … state-court action'" (quoting *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 71 (1st Cir. 2005))). The AG offers no response. He does not cite this Court's decision in *Marks* even once (or the Fourth Circuit's decision in *Jonathan R.*, or the First Circuit's decision in *Rio Grande*). Nor does he acknowledge the Supreme Court's on-point instruction that the mere potential for collateral *consequences*—which will always hang in the background when a pending "action in a state court … concern[s] the same matter in the federal court having jurisdiction"—do not justify abstention. *Sprint*, 571 U.S. at 73. That silence speaks volumes.

*     *     *

NSSF is not seeking intervention against the *Glock* suit, and in fact has repeatedly disclaimed any effort to do so. And the AG cannot foist upon NSSF a "collateral attack" that it has disavowed over and over again. *Younger* thus has no role to play here, for where federal plaintiffs "are not seeking to enjoin any state judicial proceeding," and "instead" "simply desire to litigate what is admittedly a federal question in federal court," "the balance of state and federal interests tips decidedly away from abstention under *Younger*." *Marks*, 19 F.3d at 885.

### B. This Case Would Not Satisfy the Additional Requirements for *Younger* Abstention Even if *Younger* Were on the Table.

Because NSSF seeks no relief that would interrupt or interdict the *Glock* suit, the AG's concession that NSSF's challenge on behalf of its membership "face[s] no *Younger* bar," Resp.Br.45, suffices to necessitate reversal. But the district court's abstention analysis fails even on its own terms.

1. The AG does not dispute that *Younger* abstention generally "is inapplicable with respect to" a federal plaintiff that "is not a party to" any parallel state-court action. *Argen v. Att'y Gen.*, 2022 WL 3369109, at *5 (3d Cir. Aug. 16, 2022). Nor does he dispute that NSSF and Glock are distinct parties. *See* NSSF.Br.22-34. He nevertheless insists that they should be treated as one and the same because (he says) NSSF's interests here are "the same" as Glock's interest in the enforcement action against it. Resp.Br.41. That of course is true in an abstract sense: Both NSSF and

Glock think the AG's suit against Glock should fail. But all manner of parties to distinct litigation share interests at that very high level of generality; after all, any party who challenges a statute on its face necessarily thinks that the statute cannot be enforced against anyone else. That is why the abstention inquiry has never focused on whether parties to federal and state-court litigation share common interests in the abstract. It instead focuses on whether the federal-court party is actually seeking to collaterally attack the state-court proceeding. *See NOPSI*, 491 U.S. at 373; *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 47-48 (1st Cir. 2012).

The AG repeats his claim that NSSF seeks relief from "harms to member Glock." Resp.Br.41-42. But, again, that simply is not true. In point of fact, NSSF submitted over a dozen declarations from members in support of its pleadings below. *See* JA.199-242, 250-65, 272-315. *Not one was from Glock*. That was not some ruse to evade *Younger*; NSSF made a conscious decision *not* to seek relief on behalf of Glock that would interfere with the AG's *Glock* suit, and to instead seek relief only as to *future* actions the AG may bring against NSSF members under A1765. That renders inapposite the primary out-of-circuit authorities the AG invokes (at 40-41). In *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), a church tried to collaterally attack state-court proceedings adjudicating children dependent-neglected after the children were taken by the state *from that very same church*. *Id.* at 1251-54; *see* NSSF.Br.29-30. And in *Cedar Rapids Cellular*

*Telephone, L.P. v. Miller*, 280 F.3d 874 (8th Cir. 2002), the court held that *Younger* barred a corporate plaintiff from suing in federal court as a means of interfering with state-court proceedings against the plaintiff's controlling entity.[3]  *Id.* at 882; *see* NSSF.Br.28.  Here, by contrast, the *Glock* suit could be dismissed, settled, or otherwise resolved tomorrow, and NSSF would continue to press this case.

The AG insists that NSSF's "'interests are so inextricably intertwined' with … [Glock's] that 'direct interference with the state court proceedings is inevitable'" even though NSSF seeks no relief that would accomplish it.  Resp.Br.40 (quoting *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 82 (2d Cir. 2003)).  That argument should sound familiar:  New Jersey made the same argument in *New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education* (*NJPP*), 654 F.2d 868 (3d Cir. 1981).  *See id.* at 878 (arguing "that despite [its] assertion of independent rights, [the federal associational plaintiff is] too interrelated with [the state-court defendant] … to permit a separate federal court action").  But as this Court explained in rejecting that argument, "derivative preclusion in *Younger* cases" is "limited to preclusion of [1] an employer's federal suit when its employees assert identical interests in state court,"

---

[3] Notably, moreover, *Cedar Rapids* held that *Younger* abstention did *not* apply to bar the claims of a federal co-plaintiff whose "interests [were] generally aligned" with the state defendant but was not subject to its control.  280 F.3d at 882.

*id.* (citing *Hicks v. Miranda*, 422 U.S. 332, 348-49 (1975)), and "[2] federal plaintiffs too intertwined with the state defendants 'in terms of ownership, control and management,'" *id.* (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975)). Neither circumstance is present here, as no one—least of all NSSF—is claiming that this suit would have any direct preclusive effect in the *Glock* suit, or vice versa. *See* NSSF.Br.27-31.

While the AG makes a half-hearted attempt to distinguish *NJPP*, he ultimately admits that NSSF's many other members have interests that are sufficiently distinct from Glock's. Resp.Br.45. (Nor could he seriously argue otherwise. Two of the declarants were Smith & Wesson and Ruger, respectively, which are among Glock's biggest competitors in the marketplace. *See* JA.207-13 (S&W); JA280-86 (Ruger).) Under *NJPP*, that is the end of it. "Since the interests of any of [those members] alone are sufficient to justify the court's consideration of the application for a preliminary injunction," *NJPP* compels reversal of the district court's decision to abstain from adjudicating any of NSSF claims. 654 F.2d at 881.

2. In all events, the *Glock* suit would not supply a basis for *Younger* abstention in the first place. *See* NSSF.Br.34-38. This Court previously concluded that A1765 is "purely" and "exclusively civil in nature." *NSSF I*, 80 F.4th at 222. The AG does not deny that this Court so held. He instead argues that a statute can be "exclusively civil" for standing, yet quasi-criminal for *Younger*. Resp.Br.31. While a state would

15

no doubt enjoy that "heads-I-win, tails-you-lose" theory of federal jurisdiction, that is not the law. In determining whether proceedings are "quasi-criminal" for *Younger* purposes, courts "must consider" proceedings' *substance*—i.e., the same things courts look to in determining a law's civil or criminal character in undertaking the Article III inquiry. *Smith & Wesson Brands, Inc. v. Att'y Gen.*, 27 F.4th 886, 892 (3d Cir. 2022) (citing *Sprint*, 571 U.S. at 81); *see* NSSF.Br.36-38.

3. The *Middlesex* factors also weigh heavily against abstention, as the *Glock* suit was not ongoing when NSSF initiated this federal-court action, and in no way offers NSSF an adequate opportunity to raise its claims. *See* NSSF.Br.38-46.

The *Glock* suit was not "ongoing" when NSSF filed this lawsuit back in 2022. That much is undeniable. The AG says that does not matter because no proceedings of substance took place in this case before he sued Glock in state court. Resp.Br.38-39. That argument is mystifying. The district court granted NSSF's motion for a preliminary injunction, holding that A1765 is likely preempted by federal law, and enjoined the statute's application to NSSF members for almost an entire year. JA.27; *NSSF I*, 80 F.4th at 215; CA3.No.23-1214.Dkt.16. Granted, this Court ultimately reversed the grant of preliminary injunctive relief. But that does not erase the substantive litigation that preceded it. *See, e.g.*, *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1270 (11th Cir. 2019), *cited at* NSSF.Br.41.

Nor is there any merit to the AG's suggestion that the proceedings in the initial round of this litigation lacked sufficient adversarial testing. The submissions leading to the district court's initial decision on the likelihood of the merits spanned nearly 250 pages of motions, briefing, exhibits, and declarations—including briefing from the AG himself vigorously defending the constitutionality of the statute he is charged with enforcing. *See* CA3.No.23-1214.Dkt.20 at JA56-284. And far from "swift[ly]" issuing an "initial sketch" of a decision, Resp.Br.36, the court deliberated for *over a year*, after which it issued a thoughtful, 20-page opinion holding that A1765 is likely preempted by federal law. *See* JA.27-46. To cast that adjudication aside as a "hasty first impression" with no substance, Resp.Br.36-37, blinks reality.

Finally, the *Glock* suit does not offer NSSF anything close to an adequate opportunity to press its claims on behalf of all its members (or even as to Glock). *Contra* Resp.Br.39-40. To be sure, Glock has raised some of the same arguments "in its state-court motion to dismiss" that NSSF raises here. Resp.Br.39. But the "pertinent inquiry" is not whether the state court will address some of the same issues being litigated in federal court; it is "whether the federal plaintiff" (i.e., NSSF) "has an adequate opportunity to present the federal challenge" in the state-court proceeding. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). NSSF plainly does not. The AG meekly contends that NSSF cannot avoid *Younger* without proving that it cannot "intervene" in the purportedly quasi-

criminal *Glock* suit.  Resp.Br.44-45.  But this Court has rejected that exact argument on numerous occasions.  *See* NSSF.Br.44-45 (citing cases).  It is the party arguing for abstention that shoulders the burden to "tender[] … authority suggesting that intervention by [the federal plaintiff] would be … welcome[d]."  *NJPP*, 654 F.2d at 882.  The AG has not carried that burden here.[4]

### C. *Brillhart-Wilton* Is Inapposite.

The AG's brief "*Brillhart-Wilton* abstention" argument, Resp.Br.53-55, fares no better.  The AG insists that the *Brillhart-Wilton* doctrine "*requires* federal courts to abstain" from adjudicating declaratory judgment suits in favor of "pending parallel state proceedings," "unless" a non-exhaustive set of (at least seven) factors "outweigh[s]" a supposed default presumption in favor of abstention.  Resp.Br.53 (emphasis added; capitalization altered; citation omitted).  That argument is flawed from top to bottom.[5]

For starters, *Brillhart-Wilton* is limited to circumstances in which a federal declaratory judgment suit requires resolution of "'the same *state law issues*'" that

---

[4] *Contra* Resp.Br.44, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), is no help to the AG.  That decision says not a word about intervention in the *Younger* context, or about a federal plaintiff's "burden" to prove that it can intervene in some state-court proceeding before it can proceed in federal court.

[5] The AG also premises his *Brillhart-Wilton* arguments on the theory that "NSSF's standing as a membership organization is based entirely on the harms Glock faces from the pending state suit."  Resp.Br.55.  As explained at length, that premise is demonstrably wrong.

are currently being litigated in "[a] parallel state proceeding … 'involving the same parties.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 (3d Cir. 2017) (emphasis added) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995)). While the AG ignores those critical limitations, they confirm that *Brillhart-Wilton* has no purchase here.  Even if this Court were to deem NSSF and Glock sufficiently aligned as to be effectively "the same parties," *Wilton*, 515 U.S. at 283; *but see* pp.13-16, *supra*, this federal constitutional challenge does not turn on any disputed issues of state law.  The AG certainly does not point to any.

At any rate, no case holds that *Brillhart-Wilton* ever "requires" abstention. *Contra* Resp.Br.53.  That is unsurprising:  The premise of the doctrine is that the Declaratory Judgment Act confers "unique and substantial discretion" on district courts to choose not to fix the meaning of state law in cases seeking only declaratory relief.  *See Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 230 (3d Cir. 2017).

\*      \*      \*

The Supreme Court has repeatedly "cautioned" in recent years that "federal courts should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.'"  *Sprint*, 571 U.S. at 73 (alteration in original) (quoting *NOPSI*, 491 U.S. at 368).  The district court failed to heed that caution.  This Court should reverse.

## II. NSSF's Claims Are Justiciable.

In a last-ditch effort to avoid adjudication on the merits, the AG argues that NSSF has not cured the Article III deficiencies that led this Court to dismiss its claims three years ago. Resp.Br.57-63. The district court rightly rejected that argument, *see* pp.4-6, *supra*, as it is factually and legally baseless.

Before assessing NSSF's standing, it bears reminding what claims NSSF has (and has not) pressed in its amended complaint. The AG insists that NSSF has brought four "as-applied, pre-enforcement theories": one seeking relief on behalf of Glock itself, one seeking relief on "behalf of members … that sell Glocks," one seeking relief on behalf of members "that produce" other pistols with characteristics the AG has attacked in the *Glock* suit, and one seeking relief against "actions like *Butch's* or *Point Blank*." Resp.Br.57; *see also* Resp.Br.3. None of that is correct.

First, as already discussed, NSSF has not pressed any claim or sought any relief vis-à-vis the AG's litigation with Glock. As for the remaining three "theories," the AG confuses standing and the merits (just as he repeatedly does with respect to NSSF's allegations about Glock). While those are groups on whom NSSF has relied for purposes of establishing that its members have a well-founded fear that the AG could sue them under A1765 for engaging in lawful commerce and/or commerce that takes place entirely outside New Jersey, NSSF has not brought "as-applied" claims to resolve questions unique to the facts of the lawsuits the AG has presently brought

under A1765. NSSF has brought five legal challenges to A1765 that track five distinct, overarching constitutional problems with the statute. *See* pp.7-8, *supra*. Under well-settled Article III principles, the district court correctly concluded that NSSF has standing to press each of those constitutional claims.

Article III requires NSSF to show that its members "(1) intend to take action that is (2) 'arguably affected with a constitutional interest' but is (3) arguably forbidden by [A1765], and (4) the threat of enforcement against them is substantial." *NSSF I*, 80 F.4th at 219. No one has ever disputed that the conduct A1765 restricts is affected with a constitutional interest. But last time the case was on appeal, this Court held that NSSF lacked standing because A1765 had not yet "been enforced against anyone, let alone [NSSF] or its members"—which left members unable to make sufficiently "specific claim[s]" about exactly "what [they] plan[ned] to do" that A1765 prohibits. *Id.* at 220. On top of that, the AG "disavowed prosecuting [NSSF] or its members just for participating in 'lawful commerce.'" *Id.* at 220-21. The Court thus deemed it too "uncertain[]" at that juncture whether the AG would "'sue' [NSSF] or its members" under A1765. *Id.* at 222.

As the district court correctly held, "there is no longer doubt about whether the Attorney General 'might sue [NSSF] … members'" for engaging in lawful commerce. JA.11 (quoting *NSSF I*, 80 F.4th at 222). Not long after securing dismissal, the AG filed five (now six) actions under A1765 against firearm industry

members, "each seeking to hold them liable for lawful commerce, and sometimes for injuries caused by the illegal acts of third parties too." JA.126 ¶49. In addition to the *Glock* suit, the AG brought a suit seeking to hold industry members "liable for the lawful sale *in Pennsylvania* of firearm parts kits that cannot lawfully be sold in New Jersey," JA.127 ¶51—exactly what NSSF has alleged New Jersey cannot do under the Commerce Clause, *see* JA.136-38 ¶¶79-88. And he has brought two suits against mom-and-pop retailers in New Jersey who, like numerous NSSF members, do not customarily secure background checks on purchasers of rifle ammunition— because no state or federal law or regulation requires retailers to do so. *See* JA.627-45, 681-90 (*Platkin v. Point Blank Guns & Ammo LLC*, No. MRS-C-123-24 (N.J. Sup. Ct. Nov. 13, 2024)); JA.656-80 (*Platkin v. RR Outdoors, LLC*, No. CUM-C-37-24 (N.J. Sup. Ct. Nov. 13, 2024)). Notably, those latter actions did *not* claim that the industry-member defendants' conduct violated anything *other than* A1765's "reasonable controls" provision. *See* JA.641-42 ¶¶30-38; JA.660-61 ¶¶31-39; *see also* JA.134 ¶74. Thus, it could not be clearer that the AG is enforcing A1765 against otherwise-lawful commerce in exactly the way NSSF has feared all along.

Unable to deny as much, the AG insists that "there is no basis to conclude from [NSSF's] allegations that [its] members engaged in even 'arguably forbidden' conduct or that there is any 'threat of enforcement against them.'" Resp.Br.58. In the AG's telling, NSSF's standing depends entirely on "the only then-existing suit

against an NSSF member," namely, "the *Glock* case." Resp.Br.56. That is baffling. As NSSF's complaint explains in no uncertain terms, it has not asserted standing based on the *Glock* suit alone. It has asserted standing based on the ever-growing list of A1765 suits the AG is now pursuing, most of which have nothing to do with the allegations in the *Glock* suit. And as this Court has made clear many times, including in this very case, "[a] strong sign of future enforcement is that a law has been enforced against … others for similar conduct." *NSSF I*, 80 F.4th at 220.

The AG tries to wave away all of his non-*Glock* enforcement actions. But multiple NSSF-member retailers in New Jersey submitted sworn declarations averring that they wish to continue the pre-A1765 industry norm of selling products like handgun magazines and rifle ammunition without requiring any form of "identification for purchase"—something that is not "clearly required by any state or federal law" and is often not even possible. JA.227, 256-57, 278-79, 314-15. They further averred that, because of the *Point Blank* and *RR Outdoors* (aka *Butch's*) suits—where the AG sued industry members for doing just that, *see* JA.641-43, 660-62—they have had no choice but to spend "time and money training … employees to check Firearms Purchaser Identification Cards, concealed carry permits, or hunting licenses when selling gun-related products … including magazines, [and] rifle ammunition." JA.227, 256-57, 278-79, 314-15. And they explained how their attempts to comply with New Jersey's regulation-by-litigation has tarnished their

reputations with their customers and caused them to lose sales. JA.227-28, 256-57, 278-79, 314-15. If multiple suits against similar parties for the same conduct does not suffice to show a substantial threat of enforcement, it is a mystery what would.

The AG tries to dismiss those injuries as self-inflicted and based on "fears of hypothetical" rather than "certainly impending" "future harm." Resp.Br.61. In particular, he says that NSSF members would have to worry about being sued only if they, like Point Blank and Butch's, "sold thousand rounds of [rifle] ammunition to cash purchasers" without trying to discern whether the purchaser is "a felon, domestic-abuser, or terrorist." Resp.Br.61-62. But nothing in the AG's theory in those lawsuits turned on the volume of ammunition in the controlled purchases that his office orchestrated. To the contrary, both the complaints and the consent orders in each case say that the defendant violated the law simply by selling a single handgun magazine without requiring the purchaser to disclose identification. *See* JA.649, 654, 683-87, 921-22. It is little surprise, then, that NSSF members reasonably fear that the AG may sue them for engaging in the exact same conduct.

And NSSF's basis for standing is not limited to those retailer-members' concrete injuries. Multiple members located outside New Jersey submitted sworn declarations averring that they wish to continue engaging in arms-related commerce that is lawful where they are situated, but now credibly fear the AG will claim has contributed to a public nuisance in New Jersey—just as he did vis-à-vis sellers in

*Pennsylvania* of firearm parts kits that cannot lawfully be sold in New Jersey but are lawful in the Keystone State. *See* JA.204, 227, 235, 242, 264, 278, 307, 314. NSSF also submitted declarations showing many of its members market and sell the very Glock models the AG claims are unlawful machineguns and/or manufacture or sell other striker-fire firearms that share the same characteristics he has attacked. *See* JA.204, 226-27, 234-35, 241-44, 255, 277-78, 292, 299, 306-07, 313-14.

The AG insists that manufacturing Glock pistols is somehow different from selling them, Resp.Br.58, but that is difficult to square with the core theory in his *Glock* suit, which is that these widely legal and popular semiautomatic pistols are really unlawful machineguns. The AG vaguely suggests that maybe *other* striker-fired firearms are different, but his allegations in the Glock suit speak for themselves: "The physics of a self-reloading striker-fired handgun naturally lends itself to automatic performance." JA.709 ¶54. And the AG notably stops short of promising he will *not* sue NSSF members for selling Glock models or other striker-fired pistols. NSSF members can hardly be faulted for not wanting to bank on vague assurances that Glock may be different when their livelihoods are on the line. *Cf.* JA.108 ("The Court finds that it is both an extreme and unexpected hardship that the representations made on behalf of the Attorney General as to NSSF's standing effectively 'precluded an adjudication on the merits.'"). Nor are they required to roll the dice. As this Court recognized in the earlier round of this case, "[a] strong sign

of future enforcement is that a law has been enforced against the plaintiff, a closely related party, or others for similar conduct." 80 F.4th at 220. The AG's apparent view that past enforcement actions count for Article III purposes only if they are premised on *the exact same* conduct would make it virtually impossible for regulated entities to get into federal court. Thankfully, that is not the law.

In short, whatever the case may have been in 2023, now "the stakes are high and close at hand." *Id.* at 223. This Court should reverse and remand so that NSSF can finally press the constitutional claims that the district court has already concluded are likely to succeed on the merits.

## CONCLUSION

This Court should reverse and remand for proceedings on the merits.

Respectfully submitted,

s/Erin E. Murphy

DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, PC
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040

ERIN E. MURPHY
MATTHEW D. ROWEN
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Appellant*

February 6, 2026

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to L.A.R. 46.1 that the attorney whose name appears on the Reply Brief of Appellant was duly admitted to the Bar of the United States Court of Appeals for the Third Circuit in 2013, and is presently a member in good standing at the Bar of said court.

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that this brief complies with the type-volume requirements and limitations of Fed. R. App. P. 32(a). Specifically, this brief contains 6,437 words in 14-point Times New Roman font.

## IDENTICAL PDF AND HARD COPY CERTIFICATE

The undersigned hereby certifies that this brief complies with L.A.R. 31.0(c) because the text of the electronic brief is identical to the text in the paper copies.

## VIRUS SCAN CERTIFICATE

The undersigned hereby certifies that this brief complies with L.A.R. 31.0(c) because the virus detection program SentinelOne, version 22.2.4.558, has been run on the file and no virus was detected.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Erin E. Murphy
Erin Murphy